UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SONYA FACEY,

                        Plaintiff,

        -against-

EQUINOX HOLDINGS, INC., JUAN MARRERO,
DOES 1-10

                        Defendants.
-----------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
09-cv-4411 (CBA)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 15 2013 ★
BROOKLYN OFFICE

**AMON, Chief United States District Judge.**

## INTRODUCTION

Plaintiff Sonya Facey brings this employment discrimination action against defendants Equinox Holdings, Inc. (Equinox) and Juan Marrero. Facey's March 26, 2011 third amended complaint, the currently operative complaint in this action, alleges violations of 42 U.S.C. § 1981; New York State Human Rights Law § 296 ("NYSHRL"); New York City Administrative Code § 8-107.1 ("New York City Human Rights Law" or "NYCHRL"); and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Before the Court is Equinox and Marrero's motion for summary judgment as to all claims and motion for attorneys' fees and costs. For the reasons set forth below, the motion for summary judgment is granted and the motion for attorneys' fees is denied.

## BACKGROUND

Facey, who is black, was hired as a Front Desk Associate at the Equinox in Brooklyn Heights in early September 2006.[1] Def. 56.1 ¶ 20; Pl. 56.1 ¶ 20. Her pay was initially set at $8.00 per

---

[1] Facey's employment at the Brooklyn Heights location was actually her second stint as an Equinox employee. She had also worked as a Front Desk Associate at the Equinox on Wall Street in Manhattan between July 2005 and April

1

hour. Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27. Her primary duties—for example, greeting members and non-members as they entered the club, or addressing any issues they might have—were customer-service oriented. Def. 56.1 ¶¶ 9, 26; Pl. 56.1 ¶¶ 9, 26.

At all times during Facey's employment at the Brooklyn Heights Equinox, her direct supervisor was Giovanna Ingrati. Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3. In February 2007, Ingrati promoted Facey to Front Desk Manager on Duty ("Front Desk MOD"), and Facey's pay was raised to $10.00 per hour. Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27. Although Facey agrees that the "Front Desk MOD position performed primarily the same duties as the Front Desk Associate position with some additional responsibilities," Def. 56.1 ¶ 29; Pl. 56.1 ¶ 29, she also claims that at some point she acquired additional duties as spa manager, *see* Pl. 56.1 Counterstmt. ¶ 12; McPartland Aff. ex. I (Facey Dep.) at 68-69.

In April 2007, Juan Marrero became the General Manager at the Brooklyn Heights Equinox. Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4. A few months later, in June 2007, Equinox Brooklyn Heights hired a new part-time Front Desk MOD named Giovanna Coluccio. Def. 56.1 ¶ 42; Pl. 56.1 ¶ 42. It appears that Mr. Marrero interviewed Coluccio for the position. Def. 56.1 ¶ 45; Pl. 56.1 ¶ 45. The parties dispute who set Coluccio's pay rate, but it is undisputed that it was set at $12.00 per hour. Def. 56.1 ¶¶ 46-47; Pl. 56.1 ¶¶ 46-47. Facey alleges that the reason Marrero hired Coluccio was that he disliked that all of the Front Desk Associates and Front Desk MODs were black or Latino, although she does not explain the basis for this belief. Def. 56.1 Counterstmt. ¶ 49. Facey testified that she "might" have made a comment to Marrero about the fact that Coluccio had been hired, but that otherwise she never made any complaints to Marrero about problems or issues in connection with her employment at Equinox. Facey Dep. at 105. Facey also testified

---

2006. Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1. During her nine months there, Facey was the subject of two complaints from other staff members, both of which resulted in "corrective action" notices. Def. 56.1 ¶¶ 10-16; Pl. 56.1 ¶¶ 10-16. Facey resigned two days after receiving the second corrective action notice. Def. 56.1 ¶ 17; Pl. 56.1 ¶ 17.

2

that she "discussed" with Ingrati why Equinox hired Collucio as a Front Desk MOD rather than as a Front Desk Associate, *id.* at 115-16, and that she complained to Ingrati about receiving a larger workload than Coluccio, *id.* at 122-23. Facey never reported any concerns about her employment to Human Resources, nor did she ever contact the toll-free ethics hotline available to Equinox employees. Def. 56.1 ¶ 53; Pl. 56.1 ¶ 53.

On May 7, 2007, Ingrati gave Facey a corrective action notice. Def. 56.1 ¶¶ 30-32; Pl. 56.1 ¶¶ 30-32. The notice read, in relevant part:

> On several occasions, Sonya has conducted herself in an unprofessional manner. Coworkers have complained of angry outbursts at the front desk in the presence of members and instances of shouting to the back offices for assistance instead of utilizing the intercom system. There have also been member complaints of abruptness and rudeness when handling member concerns.

Herbert Aff. ex. F. In early July 2007, Facey had an altercation with Christelle Brandon and Jose Ramos, two other Equinox managers. Def. 56.1 ¶ 34; Pl. 56.1 ¶ 34. Brandon and Ramos alleged that Facey had acted rudely towards them and raised her voice to them in the presence of a member. Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35; Herbert Aff. ex. G. A corrective action notice dated July 12, 2007 and signed by Ingrati stated that Facey "demonstrated unprofessional behavior in the presence of members" and that she would be terminated. Def. 56.1 ¶ 38; Pl. 56.1 ¶ 38; Herbert Aff. ex. H. She was terminated from Equinox that day. Def. 56.1 ¶ 37; Pl. 56.1 ¶ 37.

In early-May 2008—the parties debate whether it was May 4 or May 9—Facey filed a charge of discrimination with the EEOC. This action was commenced October 14, 2009.

## DISCUSSION

*I. Standard of Review*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The court is required to view the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Nevertheless, the non-moving party cannot rest on mere allegations or denials but must instead set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Nat'l Westminster Bank USA v. Ross*, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("[S]peculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."). No genuine issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

In discrimination cases, courts must be mindful that "[a] victim of discrimination is . . . seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991). Nevertheless, the Second Circuit has recognized that "it is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

*II. Timeliness of Action*

Defendants first argue that Facey did not timely file her charge of discrimination with the EEOC. A plaintiff must file a charge of discrimination with the EEOC "within three hundred

days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Defendants maintain that Facey did not file her charge of discrimination within 300 days of her termination on July 12, 2007, the latest possible unlawful employment practice she could challenge.

As an initial matter, the parties dispute the date on which Facey filed her charge of discrimination. The charge of discrimination itself, a copy of which defendants have provided, is dated May 4, 2008 and stamped "Received" by the EEOC on May 9, 2008. The former date, which Facey alleges is the date of filing, is 297 days after July 12, 2007; the latter, which defendants maintain is the date of filing, is 302 days after July 12, 2007. The Court cannot resolve this dispute of fact on the current record.

Moreover, Facey claims that she is entitled to equitable tolling because Equinox failed to comply with Title VII's posting requirements. It is true, as Facey argues, that several courts have held that failure to apprise employees of their rights under Title VII in accordance with the statutory posting requirement tolls the filing period, at least until such time as the employee acquires actual knowledge of those rights or retains an attorney. *See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 (1st Cir. 2005); *Callowhill v. Allen-Sherman-Hoff Co., Inc.*, 832 F.2d 269, 272 (3d Cir. 1987); *Wei Hong Zheng v. Wong*, No. 07-cv-4768 (FB)(JO), 2009 WL 2601313, *2 (E.D.N.Y. Aug. 24, 2009). As above, the Court cannot resolve on the current record whether Equinox complied with the posting requirement, as they claim, or whether Facey had actual knowledge of her rights.

The Court cannot determine at this time whether Facey timely filed her charge of discrimination with the EEOC. Although the Court is mindful that cases like this may sometimes warrant an evidentiary hearing limited to facts underlying the timeliness issue, *see Hall v. Potter*,

No. 06-cv-5003 (JFB) (AKT), 2009 WL 577753, *8 (E.D.N.Y. Mar. 4, 2009), it concludes that such a hearing is unnecessary here because Facey's claims, even if timely, are plainly without merit.

*III. Merits of Defendants' Motion for Summary Judgment*

Facey's claims for violations of 42 U.S.C. § 1981, the NYSHRL, the NYCHRL, and Title VII rest on two theories: discriminatory treatment and retaliation.[2]

*A. Discriminatory Treatment*

Facey's first set of claims are that (1) she received a lower wage than Collucio because she is black; (2) she was discharged for discriminatory reasons; and (3) she was "overworked" compared to Collucio. Mem. in Opp. at 17-22. Whether asserted under Title VII, Section 1981, the NYSHRL, or the NYCHRL, claims alleging discriminatory treatment are analyzed under the same framework and according to the same basic standards. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (noting the standards are the same under Title VII, Section 1981, and the NYSHRL); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (noting the standards are the same under Title VII, the NYSHRL, and the NYCHRL); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) (same). Accordingly, the Court considers together claims predicated on the same theory.

*1. Wage Discrimination*

Claims alleging discriminatory compensation on the basis of race are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999). At the first step, the plaintiff

---

[2] In her third amended complaint, Facey also brought causes of action for hostile work environment in violation of Title VII, Section 1981, the NYSHRL, and the NYCHRL. Compl. ¶¶ 37-42, 55. However, Facey's counsel withdrew all claims for hostile work environment during the promotion conference on January 12, 2012. McPartland Aff. ex. A at 6-7, 20. Defendants' motion for summary judgment on these claims is therefore granted.

bears the burden of establishing a prima facie case. "In order to make out a prima facie case of unequal pay for equal work under Title VII, a plaintiff must show that (1) she is a member of a protected class; and (2) she was paid less than non-members of her class for work requiring substantially the same responsibility." *Id.* In addition, a Title VII or Section 1981 plaintiff must also produce evidence of discriminatory animus. *See Belfi*, 191 F.3d at 139; *Workneh v. Pall Corp.*, No. 10-cv-3479, 2012 WL 4845836, at *10 (E.D.N.Y. Oct. 11, 2012); *see also Cancel v. Home Depot U.S.A., Inc.*, No. 10-cv-0846 (RRM) (LB), 2011 WL 3794152, at *3 (E.D.N.Y. Aug. 24, 2011) ("It is fundamental to the success of a § 1981 claim that the Plaintiff allege discriminatory intent.").

Although Facey has established that she is a member of a protected class and that she was paid less than Coluccio, who is white, she has produced absolutely no evidence of discriminatory animus. Despite Facey's contention that "it seemed like [Marrero] didn't like the fact that the front desk was all minority," Facey Dep. at 107, Facey has failed to provide any substantiation for this claim. Quite to the contrary, she admitted at her deposition that the allegation in her complaint and sworn interrogatory responses that Marerro made "racially-charged remarks on several occasions" was false. Facey Dep. at 125-26; *see also* Oral Arg. Tr. at 23-24. And at oral argument, Facey's counsel admitted that the only basis for Facey's claim of discriminatory intent is her allegation that Marrero hired Coluccio and paid her a higher wage. Oral Arg. Tr. at 19. Even if it was Marrero who set Coluccio's pay, Facey's was set by Ingrati—against whom Facey does not levy accusations of discrimination. Facey's only other attempts to offer some inference of discrimination relies on other allegations of disparate treatment, for example her alleged additional duties as spa manager or the handling of her altercation with Brandon and Ramos. Mem. in Opp. at 18-20. But as discussed *infra*, there is nothing to support the contention that

7

these occurrences were in any way influenced by discriminatory animus. Put simply, Facey has not adduced any evidence suggesting that her race factored into her pay. Summary judgment is therefore appropriate for her wage discrimination claims. *See Forsyth v. Federation Employment and Guidance Service*, 409 F.3d 565, 573-74 (2d Cir. 2005) (plaintiff failed to provide sufficient proof of discrimination to survive a motion for summary judgment where plaintiff "was able to prove only that his salary was less than other" employees' salaries), *abrogated on other grounds by Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007); *see also Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 532-33 (S.D.N.Y. 2011).

*2. Termination*

Facey's claim that her termination was motivated at least in part by discriminatory animus is also analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To state a prima facie case, a plaintiff must establish that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

"Once a plaintiff has made out a prima facie case, the employer is required to offer a legitimate nondiscriminatory business rationale for its conduct." *Id.* If the defendant carries its burden at this second step, the plaintiff must produce "admissible evidence [showing] circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Id.* Put otherwise, the plaintiff must "demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted).

Again, Facey has failed to establish her prima facie case because she offers no evidence giving rise to an inference of discriminatory intent. In any event, even if Facey's bare circumstantial showing that Coluccio was hired one month before she was terminated, that Collucio received a higher wage, and that Coluccio may have received Facey's position after she was discharged were sufficient, Equinox has provided a "legitimate nondiscriminatory business rationale" for its conduct. Backed by the two corrective action notices in the record, Herbert Aff. exs. F & H, defendants explain that Equinox terminated Facey for her unprofessional interactions with staff and club members.

Under the *McDonnell Douglas* framework, the burden shifts back to Facey to provide evidence that discriminatory animus nonetheless played some role in her termination. She makes three arguments in this regard. First, she argues that Equinox departed from the procedure set forth in its employee handbook for investigating complaints. She claims that the handbook calls for an objective investigation of the incident, that she was denied an opportunity to provide her account of the altercation with Brandon and Ramos, and that she should have been suspended rather than terminated. Mem. in Opp. at 20. But although it is true that "[d]epartures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision," *Bickerstaff v. Vassar College*, 196 F.3d 435, 453 (2d Cir. 1999), Facey has made no showing that Equinox actually did depart from its regular procedure here. That is, she has not adduced evidence that similarly situated employees were treated differently, a point which Facey's counsel conceded at oral argument before this Court. *See* Oral Arg. Tr. at 12. And defendants have offered evidence that it was within Equinox

management's discretion to bypass disciplinary steps, that Facey's conduct warranted immediate termination, and that no other employee had been suspended prior to a termination. Herbert Aff. in Further Supp. ex. D; Herbert Dep. 19; Herbert Aff. in Further Supp. ¶¶ 6-11.

Second, Facey argues that racial animus may be inferred from the fact that Coluccio was paid more. Mem. in Opp. at 20-21. But as set forth *supra*, Facey has offered no evidence whatsoever to support a claim that Coluccio's higher rate of pay was racially motivated. As such, Facey may not rely on the wage disparity to overcome defendants' showing that her termination was warranted and legitimate.

Facey's third argument is that Equinox has offered shifting explanations for Facey's termination, and that this indicates that the reason given is pretextual. Mem. in Opp. at 21. This argument is apparently based upon defendants' invocation of the corrective action notices Facey received during her prior employment at the Wall Street Equinox, see *supra* n.1, as further justification for her termination. *Id.* But the Court has already found that Facey's conduct while employed at the Brooklyn Heights Equinox supplied a legitimate, nondiscriminatory reason for her termination, and that Facey has done nothing to rebut this. As such, even if it were true that defendants' *additional* justification was deficient, that would not defeat defendants' showing.

Lastly, even if Facey's attempts to establish that defendants' proffered justification for her termination is pretextual were availing, she must also provide evidence "allowing a reasonable trier of fact to not only conclude [that] the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination," *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). She has provided no evidence of discrimination at all, let alone evidence suggesting that her termination was "more likely than not a product of discriminatory animus," *Leibowitz*, 584 F.3d at 504. Summary judgment is therefore appropriate.

*3. Overwork*

To the extent Facey asserts a discrimination claim based on her additional role as spa manager, that claim fails for the same reasons addressed above. Even assuming she was indeed assigned additional spa manager duties that Collucio was not, she has failed to connect this to discriminatory animus. Facey has not pointed to evidence establishing when she was assigned these additional duties, who assigned her these duties, and who defined Coluccio's responsibilities, let alone evidence suggesting that the decisionmaker was motivated by Facey's race. Indeed, at oral argument, Facey's counsel first represented that it was Ingrati, not Marrero, who set Facey's work schedule. *See* Oral Arg. Tr. at 16. Although counsel retracted from this position (presumably due to the fact that Facey levies no allegation of discriminatory intent against Ingrati), counsel nevertheless conceded that Facey has adduced no evidence indicating that it was Marrero who set her work schedule. *See id.* at 16-18. Summary judgment is granted.

*B. Retaliation*

Facey also alleges that Equinox retaliated against her because she complained to Ingrati that she was overworked relative to Coluccio. Whether asserted under Title VII, Section 1981, New York State Human Rights Law, or New York City Human Rights Law, claims alleging retaliation are analyzed under the same framework and according to the same basic standards. *See Vivenzio*, 611 F.3d at 106; *Weinstock*, 224 F.3d at 42 n.1; *Cruz*, 202 F.3d at 565 n.1. The Court therefore analyzes Facey's retaliation claims together.[3]

---

[3] The Court is mindful that the class of retaliatory actions cognizable under New York City Human Rights Law is broader than the "adverse actions" cognizable under Title VII. *Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009) ("The *prima facie* standard for retaliation claims under the [NY]CHRL is different, in that there is no the requirement that the employee suffer a materially adverse action. Instead, the [NY]CHRL makes clear that it is illegal for an employer to retaliate in "any manner."). Because Facey's showing is plainly insufficient under any standard, the Court analyzes all claims under the broader NYCHRL standard.

The *McDonnell Douglas* burden shifting analysis applies to claims of retaliation. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 n. 6 (2d Cir. 2011). To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) she suffered a materially adverse employment action;[4] and (4) there was a causal connection between the protected activity and the adverse employment action. *Id.* The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer carries this burden, the burden shifts back to the employee to demonstrate that the proffered reason is pretextual, and that the challenged action was actually taken in retaliation. *Id.*

The most serious deficiency in Facey's case is the lack of evidence of a causal connection between her complaint and defendants' actions. Although she has occasionally suggested throughout this action that she lodged additional complaints—for example, her counsel erroneously represented to the Court at a premotion conference that Facey had complained to supervisors about discriminatory pay disparity, McPartland Aff. ex. A—the record indicates that Facey's lone complaint, made to Ingrati, was that she was "overworked" compared to Coluccio. Facey's counsel confirmed at oral argument that the retaliation claim is predicated upon this complaint. Oral Arg. Tr. at 2-3. Although Facey testified at her deposition that she "might" have made a comment to Marrero about the fact that Coluccio had been hired, she admitted at her deposition—and counsel confirmed at oral argument—that she never complained to Marrero about discriminatory practices. Facey Dep. at 105, 121-22; Oral Arg. Tr. at 9. And she has never alleged, or even implied, that Ingrati was the individual motivated by discriminatory animus or protected activity. Accordingly, assuming for the moment that Marrero even knew

---

[4] Again, although material adversity is an element of the prima facie case under Title VII, it is not under the more lenient NYCHRL standard, which the Court applies. *See supra*, n. 3.

about Facey's complaint, Facey still must point to some action (a) taken by Marrero, and (b) taken after Marrero could have been informed of Facey's complaint to Ingrati.

Facey claims that, under the broader NYCHRL standard, Marrero took adverse employment actions against her by (1) denying her the opportunity to provide her version of events relating to the altercation with Brandon and Ramos on July 11, 2007, and (2) terminating her employment on July 12, 2007. Mem. in Opp. at 17. Even assuming the truth of the first allegation, Facey cannot establish that Marrero took either adverse action because of her complaint to Ingrati. Facey relies on her complaint's temporal proximity to these events—they occurred one month after—to establish her prima facie case. Mem in Opp. at 15. But although temporal proximity of one month may be enough to establish a prima facie case, courts have routinely held that "the timing of events alone, even if sufficient to meet the plaintiff's prima facie burden, cannot defeat summary judgment in the face of defendant's proffered legitimate reason." *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 417-18 (S.D.N.Y. 2006) (quoting *Vosatka v. Columbia Univ.*, No. 04-cv-2936 (LAP), 2005 WL 2044857, at *10 (S.D.N.Y. Aug. 25, 2005) and collecting cases so holding). As established above, defendants have explained that Facey was terminated for repeated instances of unprofessional behavior. Facey has failed to come forward with any additional evidence to establish that this reason was pretextual, and that either her termination or the surrounding circumstances constituted retaliation for her complaint to Ingrati. Save for moderate temporal proximity, there is simply no evidence in the record, direct or circumstantial, connecting her complaint and the alleged adverse actions. Accordingly, summary judgment is appropriate on Facey's retaliation claims.

*IV. Attorneys' Fees*

Defendants also move for attorneys' fees and costs. Pursuant to 42 U.S.C. § 2000e-5(k), the Court retains discretion to award attorneys' fees to the prevailing party in a Title VII suit where the suit is "frivolous, unreasonable, or without foundation." *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025, 1028 (2d Cir. 1979) (internal quotation marks omitted). Moreover, 28 U.S.C. § 1927 provides that the Court may sanction "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" by requiring that attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The Court declines to award attorneys' fees under either statute. Although the Court is troubled in particular by two prior allegations that were later found unsupported—that Marrero had made disparaging and racially charged remarks, and that Facey had complained of wage discrimination—the Court does not find that the commencement and continued prosecution of this suit was vexatious, frivolous, or in bad faith. Facey appears at least to be of the strong, albeit subjective, belief that she and other employees were discriminated against on the basis of race. Although it may have been ill-advised to continue to maintain this action after discovery failed to reveal sufficient evidence supporting her case, the Court cannot conclude that opposing defendants' motion for summary judgment was so egregious as to warrant payment of fees. The motion for attorneys' fees and costs is therefore denied.

## CONCLUSION

For the reasons stated, the motion for judgment is GRANTED as to all claims and defendants, and the motion for attorneys' fees and costs is DENIED. The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: January 15, 2013
       Brooklyn, N.Y.

                                            s/Carol Bagley Amon

                                            Carol Bagley Amon
                                            Chief United States District Judge